**LESSORS, INC., Plaintiff**

v.

**HOWARD JOHNSON, d/b/a GENERAL COOLING CORPORATION, Defendant**

Civil No. 354-1965

Municipal Court of the Virgin Islands

Div. of St. Croix

Christiansted Jurisdiction

October 19, 1967

RUSSELL B. JOHNSON, ESQ., and EDWARD J. OCEAN, ESQ.,
Christiansted, St. Croix, Virgin Islands, *for plaintiff*

YOUNG & ISHERWOOD (JAMES H. ISHERWOOD, ESQ.), Christiansted, St. Croix, Virgin Islands, *for defendant*

JOSEPH, *Judge*

OPINION

Plaintiff, Lessors, Inc., a corporation duly organized and existing under the laws of Puerto Rico, filed its complaint herein against defendant, Howard Johnson, a resident of St. Croix, doing business as General Cooling Corporation. The complaint alleged an indebtedness of $718.68 owed to plaintiff by defendant pursuant to certain motor vehicle leasing agreements. Defendant was duly served but failed to answer the suit or to appear and a judgment by default was subsequently taken against him on May 12, 1966. On May 23, 1966, defendant filed his motion to reopen judgment and for permission to file his answer. The proffered answer was filed on the same date along with a payment of $64.78 which defendant admitted to be due plaintiff as a result of the transactions forming the basis of the suit. The motion to reopen was granted on October 6, 1966, after hearing testimony presented by defendant. The case was tried on September 22, 1967, having been delayed at the request of the parties.

Defendant admitted, by answer, that he is indebted to plaintiff in the amount tendered and paid into court, his only defense being as to the amount of the indebtedness. He claimed that he had not been given proper credit for a payment he made by check written on another corporation bank account and for a deposit initially given and that he was charged rental for one vehicle for two months when he had not leased it. He has raised no question or objection as to his personal liability in the matter, but on the contrary has acknowledged it, both in his answer and in the motion to reopen.

The evidence adduced is uncontradicted that defendant, who was engaged in the refrigeration business in Puerto Rico, had for some years rented cars from plaintiff, a corporation engaged in the leasing of automobiles. On February 1, 1964, defendant obtained from plaintiff the two vehicles here in question. The one was a 1962 Ford station wagon which was used by defendant in his business and the other was a 1964 Ford sedan which was driven by defendant's wife who was also his secretary and bookkeeper. The rental for the station wagon was $110.19 and for the sedan $133.74 per month, or a total of $243.93. The lease agreements executed by the parties were for a term of two years and provided for the payment of a deposit for the vehicles equivalent to one month's rental. Two payments were actually made by defendant, one in the amount of $731.79 being made on February 2, 1964. This was made by check which was subsequently returned by the bank and replaced on April 17, 1964, by a check which was honored. This payment is shown by plaintiff's records, which were admitted in evidence without objection, as money due for rentals for the preceding months of November, December and January. Defendant himself testified that a deposit made for previously leased vehicles had been carried over as the deposit for the two vehicles

he obtained on February 1, 1964. The other payment was by check drawn on the account of Standard Refrigeration, Inc. for which credit was given defendant on June 1, 1964.

Sometime prior to returning these vehicles to plaintiff, defendant contacted Mr. Worman, plaintiff's general manager, and advised him that he was closing his business in Puerto Rico and moving to St. Croix and that he would have no need for the leased automobiles. Mr. Worman consented to the premature termination of the lease agreements and told him to return the cars. There is conflict in the testimony as to when this occurred. Plaintiff's assistant general manager, Mr. Louis Paris, testified that the cars were both returned to plaintiff's place of business on June 1, 1964, by two young men and his record entries admitted in evidence, again without objection, substantiate this fact. Defendant and his wife, Mrs. Maxine Johnson, agree that the sedan which she drove was returned on June 1st, but have testified that the station wagon was returned earlier. Mrs. Johnson says that it was turned in on March 31st, and Mr. Johnson says that he has no records and does not know exactly but that it was sometime in the latter part of March. A witness for defendant, Raul Garcia, testified that he and another employee returned the car sometime in March of 1964. He stated that he worked for defendant for two or three months after March, 1964, and yet that he remembered the date as being in March because he knew when he turned the car in that he would have to look for another job. In view of the indefiniteness of this testimony on the one hand and on the other the fact that the records kept by plaintiff in the course of its business clearly noted the return of both cars on June 1, 1964, the court finds that the cars were returned on that date. It is unfortunate that neither party produced a signed receipt for the cars which all acknowledge was given, as such a receipt would have eliminated any doubt about the matter.

That not having been done the court will have to accept the plaintiff's evidence in the matter as controlling.

Accordingly, for the four months that defendant had the use of the automobiles he owed a total of $975.72 as rental. Half of this amount was paid on June 1, 1964, leaving a balance of $487.86 due. Plaintiff applied the deposit which it held to this balance, leaving still unpaid the sum of $243.93, which is the amount of the rent due for May, 1964. Service repairs were made pursuant to the contract on March 2, 1964, and on April 20, 1964, in the amounts of $8.53 and $23.95, respectively. Plaintiff was also required to pay a fine in the amount of $8.75 for parking tickets charged against the vehicles and bank charges of $1.22 for the returned check. These items were separately billed to defendant and were added to his account.

When the cars were returned to plaintiff they were in bad repair, having been in a series of minor accidents. Plaintiff's assistant general manager attempted to contact defendant to urge him to make accident reports so that compensation for this damage could be collected from the insurance company. Mr. Paris testified that he could not reach Mr. Johnson but left a message with his secretary to the effect that unless such reports were submitted so that plaintiff could obtain reimbursement from the insurer the cost of the repairs would be billed to defendant. He received no response to this message, so after obtaining an estimate of the cost of repairs he charged defendant's account with the amount of $466.00 as the cost of repairs to both cars. Some of the repair work was performed by plaintiff's shop and some by an affiliated repair shop, Roferr Auto Shop. In view of the fact that plaintiff's arrangements for the repair of the vehicles were not at arm's length, the court finds that the sum of $366.00 is the reasonable value of the repairs, making a total due by

defendant to plaintiff of $652.38. Defendant has not questioned his contractual obligation to pay the repair charges, the fines or the bank collection charge. The court finds that he is so obligated.

■ The one remaining question, not raised by the pleadings, nor directly by the evidence produced at the trial, is that of defendant's personal liability. All of the evidence presented is entirely consistent with the fact that defendant, Howard Johnson, conducted his business as an individual trading under a business name. Although defendant claims that he did not do business in Puerto Rico as Standard Refrigeration, Mr. Paris was under the impression that he had changed his business name from General Cooling to Standard Refrigeration. Some of the records were in fact kept in that name, and defendant's final payment to plaintiff was a check drawn on an account in that name. Furthermore, no attempt at the trial was made to secure personal immunity to defendant by submitting proper legal proof of the existence of General Cooling as a corporation of Puerto Rico or elsewhere, nor was any attempt made by defendant to prove that plaintiff relied upon the credit of a corporation in its dealings with him. On the contrary the testimony shows that the vehicles in question were entrusted to him no matter in what name he was then doing business. The United States Court of Appeals, Third Circuit, in a decision by Judge Maris, recognized that a corporation can incur debts on behalf of another, and that when the sole stockholder of the corporation personally pays such debts he may look to his own corporation as well as the other obligor for reimbursement. See Wise v. DeWerd, C.A.3d, 1966, 5 V.I. 493, 500, 358 F.2d 389, 393.

Accordingly, even had it been seriously contended, which it was not, that the obligation for the payment of the indebtedness to plaintiff was in fact the obligation of a duly

authorized and existing corporation, this does not preclude a finding that the individual stockholder or officer who entered into the transaction did not thereby incur personal liability. See, in this connection, 18 C.J.S. § 581, pp. 1307–1308, and cases cited therein.

Judgment will be entered in the amount of $652.38 plus costs and attorney's fee in the amount of $175.00.